Clarissa **MIRANDA** a/k/a Clarissa
Miranda Rodriguez, et al.,
Plaintiffs, Appellants,

v.

**PONCE FEDERAL BANK**, etc., et
al., Defendants, Appellees.

No. 90–2214.

United States Court of Appeals,
First Circuit.

Heard Sept. 10, 1991.
Decided Oct. 29, 1991.

Antonio Bauza Torres, Guaynabo, P.R., for plaintiffs, appellants.

Danilo M. Eboli, with whom Francisco A. Besosa and Goldman Antonetti Ferraiuoli & Axtmayer, Hato Rey, P.R., were on brief, for defendants, appellees.

Before SELYA, Circuit Judge, COFFIN and TIMBERS,[*] Senior Circuit Judges.

SELYA, Circuit Judge.

This appeal seeks to reconfigure the dimensions of the pleading framework for civil actions brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1988). Finding the district court's order of dismissal to be consonant with applicable law, we reject the plaintiffs' suggested architecture and affirm the judgment below.

## I. BACKGROUND

Because this appeal arises from a dismissal for failure to state an actionable claim, we summarize the facts consistent with our obligation under Fed.R.Civ.P. 12(b)(6) to give the complaint a deferential reading, accepting the well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 37 (1st Cir.1991); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir. 1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

Appellant Clarissa Miranda Rodriguez (Miranda) was employed by Ponce Federal Bank (Bank) from June 9, 1980 until March 25, 1988. Beginning in the summer of 1986, Miranda cooperated in a federal money-laundering probe. The Bank's officers repeatedly encouraged her to mislead federal investigators, implied that she might be promoted if she did so, and stressed the importance of fealty to her employer. This gestalt—cooperation on Miranda's part notwithstanding dissuasion by her superiors—continued for almost two years and climaxed in Miranda's dismissal. Eventually, however, the Bank was charged with, and convicted of, numerous currency-reporting violations. *See United States v. Ponce Fed. Bank*, 883 F.2d 1 (1st Cir.1989) (per curiam).

After losing her job, Miranda brought suit in federal district court against the Bank and several of its officers.[1] Jurisdiction was premised on the existence of a federal question. *See* 28 U.S.C. § 1331 (1988). On defendants' motion, the district court dismissed most of Miranda's federal claims, but gave her an opportunity to replead certain RICO counts.[2] Miranda did

---

[*] Of the Second Circuit, sitting by designation.

[1] To flesh out the cast of characters, we note that Miranda's husband and daughter are co-plaintiffs; that the co-defendants include Ramiro Colon (the Bank's president), Andres Vinas (a vice-president who served as Miranda's immediate superior during the relevant period), and Jose Alonso (another vice-president); and that the complaint also lists an assortment of John Does, Jane Does, and conjugal partnerships. For ease in reference, we treat Miranda alone as the plaintiff-appellant, taking no view as to the propriety of including her family members as RICO plaintiffs. We abjure further reference to anonymous and/or matrimonial defendants.

[2] Miranda does not argue that the court erred in originally dismissing her other federal-law causes of action. As her case is presently postured, then, her right to a federal forum depends solely on the adequacy *vel non* of her RICO claims. *See Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir.1990) (points neither briefed nor argued are waived); *United States v.*

so, purposing in her amended complaint to invoke 18 U.S.C. § 1962(c) and (d). When the defendants renewed their Rule 12(b)(6) motion, the district court acted favorably on it. 751 F.Supp. 18. This appeal followed.

## II. STANDARD OF REVIEW

Appellate review of a dismissal under Fed.R.Civ.P. 12(b)(6) is plenary. In the course thereof, we apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). There are, however, limits on this generous formulation. For one thing, the complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. *See Dartmouth Review*, 889 F.2d at 16. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; "[d]espite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa–Martinez*, 903 F.2d at 52.

■ For another thing, in cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants. *See, e.g., Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990); *see also Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982) (elucidating a similar principle in respect to civil rights suits), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. *See* 18 U.S.C. § 1964(c). For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

With these tenets in mind, we turn to the particulars of the case at bar.[3]

## III. THE RICO ENTERPRISE

■ Insofar as appellant's suit named the Bank as a RICO defendant, it was clearly insupportable. The statute under which suit was brought provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). We have consistently interpreted the statutory requirement that a culpable person be "employed by or associated with" the RICO enterprise as meaning that the same entity cannot do double duty as both the RICO defendant and the RICO enterprise. *See Arzuaga–Collazo v.*

*Zannino*, 895 F.2d 1, 17 (1st Cir.) (same), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

**3.** Miranda's amended complaint was served on March 21, 1990. Approximately twenty days thereafter, in pursuance of a standing order of the district court applicable to all RICO cases, Miranda filed a so-called "RICO case statement." The parties and the court below have treated the case statement as an extension of the amended complaint, rather than as a "matter[ ] outside the pleadings" which would, under Fed.R.Civ.P. 12(b), convert the motion to dismiss into a motion for summary judgment. On appellate review, we follow the same course, considering the facts set forth in the case statement as part of the amended complaint.

*Oriental Fed. Sav. Bank,* 913 F.2d 5, 6 (1st Cir.1990) ("[T]he unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it."); *Odishelidze v. Aetna Life & Casualty Co.,* 853 F.2d 21, 23 (1st Cir.1988) (per curiam) ("[I]t is clear that under § 1962(c) the 'person' alleged to be engaged in a racketeering activity ... must be an entity distinct from the 'enterprise.'") (footnote omitted); *Schofield v. First Commodity Corp.,* 793 F.2d 28, 29–30 (1st Cir.1986) (identifying similar rulings in other circuits). Because the racketeer and the enterprise must be distinct, Miranda's claim against the Bank cannot succeed.

▆▆▆ Appellant's attempt to avoid this result by casting the Bank as an active participant in the RICO scheme is ineffectual. The enterprise, even if itself blameworthy, cannot also be answerable as a defendant under section 1962(c). *See Schofield,* 793 F.2d at 30. Her attempt to invoke the specter of vicarious responsibility is equally lame. Section 1962(c) does not recognize corporate liability on the enterprise's part under a theory of *respondeat superior,* even though individual officers or employees of the enterprise, acting within the scope and course of their employment, may themselves be culpable. *See id.* at 32–33.

We decline to paint the lily. It is enough to say that, as to the Bank, the RICO claims were properly dismissed.[4]

## IV. THE RICO SCHEMES

▆▆▆ Upholding the order of dismissal as to the Bank does not complete our task. Officers of a corporate enterprise may be personally liable for civil RICO violations if they conducted their employer's affairs through a proscribed pattern of racketeering activity. *See Schofield,* 793 F.2d at 30. We must, therefore, examine the particular allegations of the amended complaint as

those allegations pertain to the individual defendants.

The pleadings, though copious, are vague and inexplicit. Read indulgently, the amended complaint and the accompanying case statement, *see supra* note 3, hint at RICO claims based, variously, on actual obstruction of justice and on conspiracy to obstruct justice. Miranda's appellate brief is in the same vein. At oral argument, however, Miranda's counsel seemed to confess that the only discernible pattern of racketeering activity involved the money-laundering scheme. For the sake of completeness, we overlook the inconsistencies in the appellant's presentation and explore all three theories.

### A. *Obstruction of Justice.*

In her amended complaint, Miranda alleges in substance that the defendants entered into a scheme of RICO activity, the purpose of which was to obstruct the ongoing federal investigation in violation of 18 U.S.C. § 1510 (1988). She then claims that her discharge was in furtherance of this obstruction-of-justice scheme. We believe that the effort to rest a RICO count on this jerry-built foundation possesses three significant flaws.

▆▆▆ First, it is settled beyond peradventure that civil liability under 18 U.S.C. § 1962(c) requires a named defendant to have participated in the commission of two or more predicate crimes within the compendium described in 18 U.S.C. § 1961(1). *See Feinstein,* 942 F.2d at 41; *Fleet Credit Corp. v. Sion,* 893 F.2d 441, 444 (1st Cir. 1990). In her case statement, Miranda, responding to the district court's request that she "[l]ist the alleged predicate acts and the specific statutes which were allegedly violated," speaks only of *her* treatment at the defendants' hands and cites only 18 U.S.C. § 1510.[5] That statute provides in relevant part:

---

4. Miranda also asserts a claim against the Bank based on RICO's conspiracy provision, 18 U.S.C. § 1962(d). But, this claim alleges a conspiracy to violate 18 U.S.C. § 1962(c). Thus, the conspiracy claim suffers from precisely the same

infirmity as the section 1962(c) claim, and need not be discussed separately.

5. To be sure, the amended complaint alleged in conclusory fashion that the "defendants were ... engaged in a similar scheme" against another Bank employee, Awilda Arroyo, and that,

Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined not more than $5,000, or imprisoned not more than five years, or both.

18 U.S.C. § 1510(a) (1988). The appellant does not allege that she was induced through offers of money or tangible goods to mislead the federal investigators or to cease her participation in the probe. Indeed, the only averment that could possibly be construed as constituting bribery within the ambit of section 1510 is Miranda's claim that a promotion was dangled as a possible reward for steering federal investigators down the garden path. Assuming, for argument's sake, the adequacy of this averment *qua* bribery, more was required; proof of at least two predicate acts is needed to establish a pattern of racketeering activity. *See* 18 U.S.C. § 1961(5) (defining "pattern of racketeering activity"); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (noting that while two acts of racketeering activity are necessary to comprise a RICO pattern, they may not be sufficient). Thus, if the implied promise of a future promotion could be viewed as one act of bribery—a matter on which we do not opine—the requisite second act would still be wanting. For that reason, the amended complaint failed to state an actionable claim under 18 U.S.C. § 1962(c).[6]

Second, even on the supposition that two related predicate acts could somehow be tortured from the sprawling rhetoric contained in the pleadings, the appellant, on this record, would run up against another insurmountable obstacle. To succeed on a claim under 18 U.S.C. § 1962(c), Miranda must plead and prove that the defendants' scheme amounted to, or posed a threat of, continuing criminal activity. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238–39, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989); *Feinstein*, 942 F.2d at 44. The only scheme to obstruct justice that is alleged in the amended complaint is a scheme to prevent Miranda from participating in the federal indagation. There was no claim that, after Miranda had been cashiered, other obstructionist tactics were afoot or that other employees remained in similar jeopardy.[7] As the pleadings stand, once Miranda was discharged, the scheme, by definition, was at an end. Continuing racketeering activity of the type alleged, i.e., obstruction of justice, no longer persisted, nor was there any serious threat that such activity would likely be resumed. In such circumstances, the essential element of continuity could not be found. *See, e.g., Feinstein*, 942 F.2d at 45–46 (discussing continuity requirement); *Fleet Credit*, 893 F.2d at 445–46 (similar).

Finally, apart from the predicate act and continuity prerequisites, another crucial element of a successful RICO claim was missing from the amended complaint. In order to prevail under 18 U.S.C. § 1962(c), a plaintiff must establish a caus-

---

roughly contemporaneous with Miranda's firing, Arroyo was likewise cashiered. But these allegations (a) were never fleshed out, (b) appear to have been abandoned in the case statement, and (c) do not suggest that bribery, or other conduct inimical to 18 U.S.C. § 1510, transpired with respect to Arroyo. By the same token, the amended complaint also mentioned 18 U.S.C. § 1511 (1988). That statute criminalizes obstruction of state or local law enforcement activities. *See id.* Because appellant's reference to any investigation other than a federal investigation is vague and unparticularized, and because section 1511 was not cited as the basis for any predicate offenses in either Miranda's case statement or appellate brief, we need not dwell upon this reference.

6. To the extent that Miranda envisions each individual incident of harassment as constituting a predicate act within the purview of 18 U.S.C. § 1510(a), her asseveration is unworthy of extended discussion. Such a construction of the obstruction statute is bereft of any discernible basis in law, language, or logic. And in the bargain, so balkanized a reading would eviscerate the pattern requirement upon which RICO liability depends.

7. The appellant's mention of a similarly situated coworker, Arroyo, even if otherwise cognizable, *see supra* note 5, did not fill this void. By the appellant's own account, both she and Arroyo were fired at roughly the same time.

al relationship between the racketeering predicates and her asserted injury. *See Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285 ("Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."). Because the injury complained of here—Miranda's loss of employment—was not the product of bribery or any other predicate crime, *see generally* 18 U.S.C. § 1961(1) (enumerating RICO predicates), but of her dismissal, the injury cannot be said to have occurred "by reason of" a RICO violation. Put another way, a claim for wrongful discharge cannot be successfully pursued under civil RICO when the injury itself is not the result of a predicate act. *See Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987) (injury stemming from discharge is not actionable under RICO because it does not flow from defendant's acts of mail and wire fraud); *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir.1987) (similar); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991); *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154–56 (6th Cir.1990); *O'Malley v. O'Neill*, 887 F.2d 1557, 1561–62 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 (3d Cir.1989); *Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir.1989) (per curiam); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1216 (5th Cir.1988).

Notwithstanding the rule that wrongful discharge claims are not ordinarily redressable under RICO, we at one time left open the possibility that a different result might inure if the firing occurred as a direct result of an obstruction-of-justice predicate act. *See Nodine*, 819 F.2d at 349 n. 3 (dictum).[8] By recasting her RICO claim on the fundament of a scheme to obstruct

justice instead of resting it on the money-laundering scheme, Miranda was plainly laboring to bring her own situation within the confines of this dictum. She did not succeed. While it may be theoretically possible to allege a wrongful discharge which results directly from the commission of a RICO predicate act, as *Nodine* suggests, any such safe harbor would be severely circumscribed.

 In any event, we need not determine here the exact dimensions of the *Nodine* dictum. In this case, crediting appellant's factual allegations, it is nonetheless readily apparent that Miranda was fired not as a means of obstructing justice, but in retaliation for her refusal to facilitate the cover-up. A retaliatory discharge simply does not violate 18 U.S.C. § 1510—a statute which proscribes only those actions in the nature of bribery that a defendant may utilize to impede another person's cooperation with federal law enforcement authorities. In short, Miranda has failed to bring her case within any recognized exception to the general rule governing instances of wrongful discharge. Her section 1962(c) count was, therefore, appropriately dismissed. *See Pujol*, 829 F.2d at 1205 (discussing RICO causal connection requirement in retaliatory discharge cases).

### B. Conspiracy to Obstruct Justice.

Invoking 18 U.S.C. § 1962(d), the appellant also alleges that the individual defendants, with others, conspired to devise a scheme of racketeering activity focused on obstruction of justice. On the record before us, we are hard pressed to see how this charge adds materially to the section 1962(c) claim. We explain briefly.

 To succeed, a RICO conspiracy claim must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes. *See Feinstein*, 942 F.2d at 41 ("[E]ach defendant in

---

**8.** In *Nodine*, although holding an obstruction-of-a-criminal-investigation allegation to be inadequate for lack of factual basis, we observed that this allegation came "closest to satisfying [RICO's] injury requirement." *Nodine*, 819 F.2d at 349 n. 3. At least one other court has taken this observation to suggest that "allegations of obstruction of justice *might* satisfy [the] standing requirement in certain cases involving dismissals of employees for reporting violations." *Kramer*, 912 F.2d at 155 (emphasis in original).

a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses."); *United States v. Angiulo*, 847 F.2d 956, 964 (1st Cir.), *cert. denied*, 488 U.S. 852, 928, 109 S.Ct. 138, 314, 102 L.Ed.2d 110, 332 (1988); *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1249, 1250, 75 L.Ed.2d 479 (1983). Here, the conspiracy allegation is perfunctory. It fails to provide any specifics as to the details of the alleged conspiracy or the predicate acts committed in the pursuit thereof. Like RICO claims generally, *see supra* Part II, a RICO conspiracy claim that is alleged in wholly conclusory terms will not withstand a motion to dismiss. *Cf., e.g., Brennan v. Hendrigan*, 888 F.2d 189, 195 (1st Cir.1989) (conclusory allegations of conspiracy are impuissant to state a claim under 42 U.S.C. § 1983); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977) (similar), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). The section 1962(d) claim is, therefore, insufficient as a matter of law.

■ At any rate, even if appellant had adequately alleged the existence of an obstruction-of-justice conspiracy, her claim would not pass muster. An actionable claim under section 1962(d), like one under section 1962(c), requires that the complainant's injury stem from a predicate act within the purview of 18 U.S.C. § 1961(1). *Accord Reddy*, 912 F.2d at 295 (upholding dismissal of RICO conspiracy charge because injury did not result from the commission of a specified predicate act); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990) ("[W]e hold that standing may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy."). Congress painstakingly enumerated a com-

plete list of predicate acts in 18 U.S.C. § 1961(1). For judges, under a conspiracy rubric, to allow RICO damages for an injury caused other than by an enumerated predicate offense would be tantamount to rewriting the statute. Although the Court has stated that Congress intended RICO to be generously construed, *see Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285, there are bounds to interpretive liberality.[9]

In this instance, as already demonstrated, *see supra* Part IV(A), the injury Miranda alleged in consequence of the obstruction-of-justice conspiracy (her discharge) was not caused by the commission of a predicate act within the contemplation of 18 U.S.C. § 1961(1). Thus, the district court properly dismissed her section 1962(d) claim.

### C. *Money Laundering.*

At oral argument, the appellant virtually abandoned the claims pleaded in the amended complaint, relying instead upon the underlying scheme to launder money to supply the needed pattern of racketeering activity under 18 U.S.C. § 1962(c). This was, of course, the theory that Miranda pursued in her initial complaint and then disowned when given leave to amend. Although we could simply refuse to consider the argument on grounds of procedural default—it was, after all, neither preserved in the lower court nor meaningfully briefed on appeal—we choose to address it.

■ Once a RICO pattern has been established, it does not follow that every malefaction a defendant commits will give rise to civil RICO liability. *See Sedima*, 473 U.S. at 496–97, 105 S.Ct. at 3285; *Hecht*, 897 F.2d at 24; *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 636 (2d Cir.1989). So, even if the amended complaint pleaded the money-laundering scheme as a pattern of racketeering activity, nothing would be gained unless the

9. This case is factually distinguishable from *Shearin*, 885 F.2d 1162, a case in which the Third Circuit ruled that "[p]redicate acts for [a RICO] conspiracy do not of necessity consist of section 1961(1) racketeering activity." *Id.* at 1169. At any rate, to the extent, if at all, that *Shearin* is doctrinally incompatible with the rule we announce today, we, like other circuits, *see, e.g., Reddy*, 912 F.2d at 295; *Hecht*, 897 F.2d at 25–26, find *Shearin*'s reasoning to be unconvincing.

claimant could establish that her injury resulted from the RICO activity. *See Sedima*, 473 U.S. at 497, 105 S.Ct. at 3285; *see also supra* Part IV(A) and cases cited. Since Miranda was injured by the loss of her job, however, not as a direct consequence of the defendants' money-laundering activities, the requisite causal nexus was lacking in her case. The cases are legion that an employee who is fired for tattling about an employer's wrongdoing, or for refusing to participate in or conceal an illegal scheme, is not deemed to have been injured by reason of a RICO predicate act. *See, e.g., Reddy,* 912 F.2d at 294; *Kramer,* 912 F.2d at 154–56; *O'Malley,* 887 F.2d at 1561–62; *Shearin,* 885 F.2d at 1168; *Burdick,* 865 F.2d at 529; *Cullom,* 859 F.2d at 1216; *Pujol,* 829 F.2d at 1205; *Nodine,* 819 F.2d at 349.

## V. CONCLUSION

We pause to add an eschatocol of sorts. If the facts are as Miranda alleges, then the defendants' conduct was reprehensible. But the RICO statute, though often criticized as overly broad, *see, e.g., Sedima,* 473 U.S. at 500, 506, 105 S.Ct. at 3292, 3295 (Marshall, J., dissenting), is not entirely open-ended. It cannot be used as a surrogate for local law, as a panacea to redress every instance of man's inhumanity to man, or as a terrible swift sword capable of righting all the wrongs of a troubled world. In the last analysis, we must remember that federal courts are courts of limited jurisdiction. In many cases, as here, our duty is done when we enforce a valid statute as Congress wrote it.

We need go no further. Because Miranda never adequately alleged a RICO claim, and because her pendent claims were subject to dismissal without prejudice for want of subject matter jurisdiction if no federal claim passed muster, *see, e.g., Feinstein,* 942 F.2d at 47; *Brennan,* 888 F.2d at 196, her amended complaint was properly dismissed under Civil Rule 12(b)(6). And, since the co-plaintiffs' federal-law claims, to the extent cognizable at all, *see supra* note 1, are plainly dependent upon Miranda's claims, the same result must obtain as to them.

*Affirmed. Costs in favor of appellees.*