**Mulligan v. Choice Mortgage**          **CV-96-596-B    9/30/98**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Michael Mulligan and Patricia**</u>
<u>**Mulligan; for themselves and on**</u>
<u>**behalf of all others**</u>
<u>**similarly situated**</u>

    **v.**                                              Civil No. 96-596-B

<u>**Choice Mortgage Corp. USA**</u>


<u>**MEMORANDUM AND ORDER**</u>


Michael and Patricia Mulligan (the "Mulligans") brought this putative class action suit against their mortgage broker, Choice Mortgage Corp. USA ("Choice"), alleging that Choice's conduct in arranging their mortgage loan violated, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1961 <u>et seq.</u> (West 1994 & Supp. 1998).[1]  Choice now moves to dismiss the Mulligans' RICO claim pursuant to Fed. R. Civ. P.

---

[1]  The Mulligans also allege that Choice: (1) violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2607 (West 1989 & Supp. 1998); (2) violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2 <u>et seq.</u> (1995); (3) breached the fiduciary duty it owed to class members; (4) breached the terms of its contracts with class members; and (5) committed common-law fraud.  In a separate order, I granted the Mulligans' motion to certify their plaintiffs' class with respect to their RESPA, Consumer Protection Act, and breach of contract claims.  I declined to certify a class with respect to plaintiffs' RICO, fraud, and breach of fiduciary duty claims.

12(b)(6). Choice argues that the Mulligans' complaint fails to sufficiently allege the existence of a RICO "enterprise" and, therefore, fails to state a claim under 19 U.S.C.A. §§ 1962(c), 1964(c). For the reasons discussed below, I deny defendant's motion to dismiss.

## I. STANDARD OF REVIEW

To survive a motion to dismiss, the complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery . . . ." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). In evaluating a defendant's motion to dismiss an action for failing to state a cognizable claim, I must "assume that the factual averments of the complaint are true and must draw all plausible inferences in the plaintiff's favor." Bernier v. Delahanty, 129 F.3d 20, 23 (1st Cir. 1997), cert. denied, 118 S. Ct. 1305 (1998) (citing Leatherman v. Tarrant Cty. Narcotics Intell. & Coord. Unit, 507 U.S. 163, 164 (1993)). From that vantage point, I must then determine whether the pleadings present any set of facts that would entitle the plaintiff to relief. Id. at 25. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no

2

set of facts in support of his claim which would entitle him to relief." <u>Miranda v. Ponce Fed'l Bank</u>, 948 F.2d 41, 44 (1st Cir. 1991) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-6 (1957)).

In evaluating the sufficiency of a plaintiff's allegations, "bald assertions, periphastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation" should carry no weight. <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990). This is especially important in civil RICO claims, because these claims are an extremely potent and potentially stigmatizing weapon. Accordingly, when alleging civil RICO violations, "particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." <u>Miranda</u>, 948 F.2d at 44 (citing <u>Figueroa Ruiz v. Alegria</u>, 896 F.2d 645, 650 (1st Cir. 1990). The First Circuit has imposed a threshold requirement that a RICO complaint "state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged."[2] <u>Miranda</u>, 948 F.2d at 44;

_____

    [2] Fed. R. Civ. P. 8(a) provides that, as a general rule, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In <u>Leatherman</u>, the Supreme Court relied on Rule 8(a) in rejecting an argument that civil rights claims against municipalities are

3

see also <u>Figueroa-Ruiz v. Alegra</u>, 896 F.2d at 648 n.3 (delineation of predicate acts of fraud under RICO must go beyond "vague references"). I apply this standard in evaluating the sufficiency of plaintiffs' complaint.

Defendant's motion to dismiss is based solely on the premise that the Choice-Long Beach business arrangement does not meet the statutory definition of an "enterprise." Accordingly, I reach only that question in the following analysis.

## II. DISCUSSION

RICO, 18 U.S.C. § 1962(c), provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or

---

subject to a heightened pleading requirement. <u>See</u> 507 U.S. at 168. While it is reasonably clear that a civil RICO plaintiff must plead any allegations of fraud with particularity notwithstanding <u>Leatherman</u>, <u>see</u> <u>Doyle v. Hasbro, Inc.</u>, 403 F.3d 186, 194 (1st Cir. 1996), (Fed. R. Civ. P. 9(b) requiring that claims of fraud must be pleaded with particularity applies to allegations of fraud in civil RICO claims), I question whether, after <u>Leatherman</u>, other elements of a civil RICO claim may be subject to a heightened pleading requirement. <u>See, e.g.</u>, <u>MCM v. Andrews-Bartlett & Assoc., Inc.</u>, 62 F.3d 967 (7th Cir. 1995) (applying "notice pleadings" standard to non-fraud based civil RICO claims in the wake of <u>Leatherman</u>). I need not resolve the question as to whether <u>Miranda</u> remains good law after <u>Leatherman</u> as I conclude that plaintiffs are entitled to prevail on the motion to dismiss even if their entire RICO claim is subject to a heightened pleading requirement.

4

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim for relief under RICO, a plaintiff must *separately* allege both (1) an "enterprise," and (2) a "pattern of racketeering activity." See Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)). To prove the existence of an "enterprise," the plaintiff must establish that the defendants are part of "a group of persons associated for a common purpose of engaging in a course of conduct." Id. The plaintiff must then show that members of this enterprise committed "a series of criminal acts" to prove the "pattern of racketeering." Id. Qualifying predicate criminal acts are enumerated by the RICO statute. See 18 U.S.C.A. § 1961(1) (West 1984 & Supp. 1998).

While the enterprise "may be the 'vehicle' through which the unlawful pattern of racketeering activity is committed," Libertad, 53 F.3d at 441-42 (quoting National Org. for Women v. Scheidler, 114 S. Ct. 798, 804 (1994)), the entire RICO enterprise cannot be named as the RICO defendant. See id. at 442; Miranda, 948 F.2d at 44-45. In other words, the person or persons alleged to be engaged in the racketeering activity and the RICO enterprise itself cannot be coextensive. See id.,

5

Odishelidze v. Aetna Life & Casualty Co., 853 F.2d 21, 23 (1st Cir. 1988)(per curiam).

RICO defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4). Two types of enterprises emerge from this definition: legal entities and "associations in fact." See Libertad, 53 F.3d at 441 (citing Turkette, 452 U.S. at 580-81. Here, plaintiffs allege that Choice and Long Beach Mortgage Corp., the Mulligans' mortgage lender, comprised an association-in-fact enterprise.[3]

A two-step analysis will determine whether plaintiffs have sufficiently alleged an enterprise in the present controversy. First, I must determine whether a "common purpose" animates the relationship between members of the enterprise. See Turkette, 452 U.S. at 583 (an "enterprise" is a "group of persons

_____

[3] Plaintiffs also alleged associations in fact between: (1) Choice and each other mortgage lender involved in a transaction with a member of the putative class; and (2) Choice and all the relevant mortgage lenders, collectively. Because I found their RICO claim unsuitable for class certification, however, plaintiffs may proceed on this claim only in their individual capacity. The only alleged association-in-fact enterprise relevant to plaintiffs' personal civil RICO action is that between Choice and Long Beach. Accordingly, I limit my review to plaintiffs' allegations with respect to that alleged enterprise.

6

associated together for a common purpose of engaging in a course of conduct"). Second, I must examine whether plaintiffs have successfully established the two requirements for an "association in fact": (1) that plaintiffs have alleged "evidence of an on-going organization, formal or informal," and (2) "evidence that the various associates function as a continuing unit." See Libertad, 53 F.3d at 441. Finally, even where a complaint otherwise sufficiently alleges an enterprise, the complaint will not be sufficient unless it alleges that the enterprise has an existence separate and apart from the racketeering activity. See United States v. Riccobene, 709 F.2d at 214, 223-24. I consider each requirement in turn.

## A.  Common Purpose

According to the Eighth Circuit, "the enterprise itself, broadly speaking, must be marked by a common purpose . . . but it is sufficient if a RICO defendant shared in the general purpose and to some extent facilitated its commission." Handeen v. Lemaine, 112 F.3d 1339, 1351 (8th Cir. 1997); see also United States v. Kragness, 830 F.2d 842, 856 (8th Cir. 1987) (deeming the "common purpose" test satisfied where defendant shared common purpose of enterprise and to some extent carried it out). Plaintiffs assert that the common purpose motivating Choice and

7

Long Beach was their intent, "through fraudulent means and commercial bribery, [to] originate and produce mortgage loans written at above market interest rates." (Compl., 4-5, 54-57). While I make no finding here on the merits of that contention, I conclude that the plaintiffs' have successfully alleged that Choice and Long Beach are, at the least, united in the common purpose of joining forces to provide loans to customers at interest rates profitable to both companies.

**B.    Association in Fact**

    1.    Ongoing Organization

To satisfy the ongoing organization requirement, which relates to the superstructure of the enterprise, plaintiffs must show that,

> some sort of structure exists within the [enterprise] for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis. This does not mean [however] that every decision must be made by the same person, or that authority may not be delegated.

Riccobene, 709 F.2d at 222.

Plaintiffs' complaint suggests a clear structure to the relationship between Choice and Long Beach: Choice originates loan applications for Long Beach, and Long Beach approves those loans at individually specified interest rates and provides the

8

required capital for those loans. While further discovery may unearth the precise mechanism underlying this arrangement, at this stage, plaintiffs have met their burden on this prong of the test. See Taylor v. Bob O'Connor Ford, Inc., 1998 WL 177689, at *17 (N.D. Ill. April 13, 1998) (holding that it was reasonable to infer an ongoing relationship when a car dealership repeatedly supplied customers with financing obtained from the same bank); Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600, 610 (N.D. Ill. 1997) (holding that a repeated course of referrals between a mortgage broker and a lender "appears to be amenable to consensual decisionmaking" since broker and lender "must agree on an appropriate broker premium fee for each transaction").

2. Continuing Unit

The plaintiffs must also show that "the various associates [of the enterprise] function as a continuing unit." Riccobene, 709 F.2d at 223 (quoting Turkette, 452 U.S. at 583). According to the Third Circuit, this requires that "each person perform a role in the group consistent with the organizational structure . . . and which furthers the activities of the organization." Id.

Plaintiffs have documented at least 24 separate occasions between May 1996 and December 1996 on which Choice originated

9

loans for Long Beach and Long Beach subsequently provided the capital to fund those loans.  See Compl. App. C. The complaint also claims that Choice, "induce[d] their unknowing customers to sign for loans not at the 'par' interest rates at which their loans had actually been approved by the mortgage lenders, but at higher, 'above par' interest rates."  Compl. at 4.  Long Beach then paid Choice an allegedly illegal "yield spread premium" each time one of these above par loans closed.

Whether the Choice-Long Beach cooperative qualifies as a continuing association is a question of fact.  See Riccobene, 709 F.2d at 222.  Accordingly, at this stage of the proceedings, I must draw all plausible factual inferences in the plaintiffs' favor.  It is clear that Choice, as a mortgage broker, requires a constant source of capital to provide loans to its customers, and Long Beach uses mortgage brokers to connect with mortgagees. Without ruling on the legality of the alleged "yield spread premiums," since the plaintiffs have documented no less than 24 mortgage referrals between Choice and Long Beach between May and December 1996, the plaintiffs have sufficiently met their burden to show continuity in the relationship between Choice and Long Beach.

## C. Enterprise Exists Separate and Apart from Racketeering Activity

To satisfy this final element, plaintiffs need only show that the enterprise "has an existence beyond that which is necessary merely to commit the predicate acts." See Riccobene, 709 F.2d at 223-24. Both Choice and Long Beach are legitimate enterprises that transact a significant volume of mortgage loan business. Whether or not Long Beach paid allegedly illegal yield spread premiums to Choice in some or all of the 24 transactions cited in the plaintiffs' complaint, each of these transactions was based on an otherwise legitimate and common business arrangement -- a mortgage loan brokered by Choice and funded by Long Beach.

Long Beach's provision of a mortgage loan, brokered by Choice, to a customer, would result in a benefit to both Choice and Long Beach without the payment of a yield spread premium. This establishes that the relationship between Choice and Long Beach would meaningfully exist even absent the payment of yield spread premiums. It is clear, then, that the relationship between Choice and Long Beach has an element distinct from the alleged racketeering activity. Long Beach, as a mortgage lender, has a legitimate need for the services of mortgage brokers such as Choice, and Choice, as a mortgage broker, has a legitimate

11

need to conduct business with mortgage lenders such as Long Beach.  See Hastings, 984 F. Supp. at 610 (noting that mortgage lenders "would require the services provided by mortgage brokers . . . even if [they] did not participate in schemes designed to artificially inflate the interest rates charged to borrowers").

Plaintiffs have thus met their burden of showing that the association-in-fact between Choice and Long Beach exists independent of the commission of predicate acts of racketeering activity.  See Taylor, 1998 WL 177689, at *17; Hastings, 984 F. Supp. at 610.

## III.  CONCLUSION

Plaintiffs have alleged sufficient facts in their complaint to support their claim that the relationship between Choice and Long Beach constitutes an "association in fact" enterprise.  I have considered the case of Marisol v. Universal Lending Corporation, 96-B-2845 (D.Co. December 4, 1997), cited repeatedly by the defendant, because it presents a very similar question.  I find little guidance in Marisol given its readily distinguishable facts.[4]  Whether the activity between Choice and Long Beach

---

[4]  The Marisol court took pains to chastise the plaintiff for her "obfuscatory" argument, noting that, "[i]nstead of pinpointing an enterprise and describing its structure and

actually constitutes a "pattern of racketeering activity" is not challenged in the defendants' motion to dismiss, and consequently, does not require pursuit at this time. Accordingly, defendants' motion to dismiss (document no. 54) is denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 30, 1998

cc:   Richard Mills, Esq.
      Edward K. O'Brien, Esq.
      Paul F. Ware, Jr., Esq.

_____

organization, Plaintiff simply lists five different potential enterprises, and, without any further elucidation, places the onus upon the Court to sort out whether any of these five meet the legal requirements [of an enterprise]." 96-B-2845 (D. Co. Dec. 4, 1997) at 6. As I have noted above, plaintiffs in the instant case have provided sufficiently specific factual predicates to allege an enterprise at this stage of the proceedings - distinguishing the instant case from <u>Marisol</u>.