289 F.Supp.2d 1 (2003)
ASOCIACION DE EDUCACION PRIVADA DE PUERTO RICO, et al. Plaintiffs
v.
Javier A. ECHEVARRIA VARGAS Defendant
No. CIV. 03-1213(HL).
United States District Court, D. Puerto Rico.
October 27, 2003.
*2 Antonio J. Amadeo-Murga, San Juan, PR, Luis R. Pinero-Gonzalez, Rio Piedras, PR, for Plaintiffs.
Felix M. Roman-Carrasquillo, Elfrick Mendez-Morales, San Juan, PR, for Defendant.

OPINION AND ORDER
LAFFITTE, Chief Judge.
Before the Court is defendant's motion to dismiss plaintiffs' complaint. Plaintiff the Asociation de Education Privada de Puerto Rico ("Association") represents a number of private schools in the Commonwealth of Puerto Rico. The Association, in conjunction with a number of private schools, has requested the court to issue a permanent injunction and declaratory judgment against the defendant, the Secretary of the Department of Consumer Affairs of the Commonwealth of Puerto Rico ("Secretary"). More specifically, plaintiffs request this Court to declare unconstitutional the Department's Regulations for the Publication of Information in the Sale and Distribution of Textbooks, Number 6458 "regulations". The Association alleges that Section 11 of the regulations violates their right to free speech under the First and Fourteenth Amendments of the Unites States Constitution by requiring private schools to give students the option to use prior editions of textbooks when new editions of the same textbook do not include substantive changes. In response, the Secretary filed this motion to dismiss. (Dkt. 5).

Standard of Review
In ruling on a 12(b)(6) motion to dismiss, a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiffs' favor. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n, 37 F.3d 12, 14 (1st Cir.1994). A court should *3 not dismiss a complaint for failure to state a claim unless it is clear that the plaintiffs will be unable to prove any set of facts which would entitle them to recovery. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 (1st Cir.1991). This deferential standard is not a "toothless tiger." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir.1996). The court is not obliged to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996).

The Regulations
The regulations at issue were drafted and instituted by the Puerto Rico Department of Commerce ("DACO"). Specifically, Section 11 requires all private schools to provide parents with a list of textbooks which includes information about which textbooks have changed their editions, the specific nature of these changes, and whether the changes are substantive. If the new edition does not incorporate substantive changes, then the regulations require that parents be given the option of purchasing and using the prior edition. Section 4 of the Regulations defines substantive changes as "historical, technological, scientific and/or cultural changes in a new edition of a textbook that are so significant so as to result in the total or partial revision of one or more chapters of the book, or the addition of one or more chapters to the same." (Dkts. 1, 5). Substantive changes do not include deleted chapters or sections, cosmetic changes (i.e. cover changes, page numbers, chapter order, texture of textbooks), or the addition of a few sentences, illustrations, graphs, tables, or photographs. (Dkts. 1, 5). In order to ensure compliance the regulations require the publisher, distributor or bookstore to provide the requisite information about the textbooks or face penalties up to the amount of $10,000.00. (Dkt. 1).

Discussion
Plaintiffs' primary argument is that the regulations violate their fundamental right to free speech and academic freedom and hence should be reviewed under a strict scrutiny standard. It is true that under the First Amendment a "government many not regulate speech based on its substantive content or the message it conveys." Rosenberger v. Rector & Visitors of University of Virginia, 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). Such content-based regulations are subject to strict scrutiny and require the government to show that the challenged regulations "are necessary to serve a compelling state interest and [are] narrowly drawn to achieve this end." Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 231, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). Similarly, free speech can also be violated by regulations which only restrict the time, place, and manner of speech. However, such regulations are only reviewed under intermediate scrutiny. Clark v. Community for Creative NonViolence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Under this analysis, content-neutral regulations must be narrowly tailored to serve a significant governmental interest ... that ... leave open ample alternative channels for communication of information. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).
"Deciding whether a particular regulation is content based or content neutral is not always a simple task." Turner Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). In this case, however, it is evident that plaintiffs are incorrect in their assertion that the regulations should be reviewed under a strict scrutiny standard. *4 The regulations promulgated by the Secretary do not ban the substantive content of any particular message. They do not restrict plaintiffs' right to teach any particular subjects or to distribute any specific materials. Indeed, the focus of the regulations are on textbooks that have changed stylistically not substantively. Hence, DACO's regulations only limit the manner in which the school curriculum is taught. It does not "effectively drive certain ideas or viewpoints from the marketplace." Simon & Schuster, Inc. v. Members of N.Y. State Victims Bd., 502 U.S. 105, 116, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). In fact, all it does is shift a small amount of decision-making power from the hands of the schools to the hands of the parents.
Nevertheless, all content-neutral regulations must still pass intermediate scrutiny by serving a significant government interest and providing alternative channels of communication. In this case, the Court is convinced that DACO has a significant interest in ensuring that parents do not unnecessarily pay for textbooks that contain stylistic changes. As the Supreme Court has noted:
A state's decision to defray the costs of educational expenses incurred by parents  regardless of the type of schools their children attend  evidences a purpose that is ... understandable. An educated populace is essential to the political and economic health of any community, and a state's efforts to assist parents in meeting the rising costs of educational expenses plainly serves this secular purpose of ensuring that the state's citizenry is well-educated.
Mueller v. Allen, 463 U.S. 388, 395, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983). In this regard, DACO's efforts are not only significant but indeed part of the broader mandate of the state to educate it citizens. Moreover, the Court believes that the regulations do provide ample alternative channels of communication. While it is true that the regulations allow students to use textbooks that may not include a specific photograph or sentence, nothing in the regulations precludes teachers from providing students with a photocopy of the missing photograph or sentence. Similarly, plaintiffs have all the power of persuasion at their disposal to encourage all parents to purchase new textbooks for the sake of uniformity. This should not be difficult if the use of different textbooks is as disruptive and detrimental to the education of students, as plaintiffs claim. The Court, on the other hand, is not so convinced. Old textbooks that do not have substantive changes are ample alternative channels for the communication of information and ideas.
The Supreme Court has consistently held that "while parents have a constitutional right to send their children to private schools ... they have no constitutional right to provide their children with private school education unfettered by reasonable government regulation." Runyon v. McCrary, 427 U.S. 160, 178, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). See also Board of Education v. Allen, 392 U.S. 236, 245-47, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). It is true however, that the state may not institute unreasonable regulations which are so "pervasive" and "all encompassing" that they destroy the autonomy of private schools. New Life Baptist Church Academy v. Town of East Longmeadow, 885 F.2d 940, 945 (1st Cir.1989) (quoting State v. Whisner, 47 Ohio St.2d 181, 351 N.E.2d 750 (1976)). Indeed, plaintiffs case is rooted in this premise. In support, they cite the First Circuit's decision in Cuesnongle v. Ramos, 835 F.2d 1486 (1st Cir.1987).
*5 In Cuesnongle, the First Circuit addressed the issue of whether a private university could be subject to state regulations designed to protect consumers. In particular, plaintiffs challenged DACO's decision to exercise jurisdiction over complaints filed by students requesting reimbursement for classes that were cancelled after university teachers went on strike. The Court rejected the university's contention that the state "does not have power, authority or jurisdiction to review any matter concerning Academia" and held that DACO's actions were constitutional. Cuesnongle, 835 F.2d at 1500-02. In dicta, the Court warned that if "a university is able to show that any particular decision, order, or compelled procedure of the agency impermissibly intrudes upon the academic freedom protected by the First Amendment, it may be afforded relief in federal court." Id. at 1502.
In citing Cuesnongle, however, defendants fail to recognize the distinction between universities and high schools. Indeed, courts have noted that there are factors which "tend to limit the relevance of `academic freedom' at the secondary school level" in contrast to the "rarified atmosphere of the college or university." Zykan v. Warsaw Community School Corp., 631 F.2d 1300, 1304 (7th Cir.1980). Moreover, even if the regulations minimally curtail the school's right to academic freedom, this Court has already established that the regulations do not violate their right to free speech upon which the right to academic freedom is predicated. See Trejo v. Shoben, 319 F.3d 878, 884 ("The academic freedom claim is subsumed by the broader free speech claim, for `the First Amendment guarantees are sufficiently broad to provide some protection for what has been called academic freedom'") (quoting Zykan, 631 F.2d at 1304). Ultimately, the regulations instituted by DACO place only minimal limitations on a private school's latitude to operate independently. As a result, the Court hereby holds that the regulations instituted by DACO are constitutional and grants defendants' motion to dismiss.
IT IS SO ORDERED.