Manoochehr Fallah **MOGHADDAM,**
et al., Plaintiffs,

v.

**DUNKIN' DONUTS, INC.,** Defendant.

No. Civ.A. 02–11794–PBS.

United States District Court,
D. Massachusetts.

Nov. 7, 2003.

See, also, 2002 WL 1940724.

Robert Zarco, Zarco Einhorn & Salkowski, Miami, FL, for Plaintiffs.

Christopher J. Wallace, Eric L. Yaffe, Jeffrey L. Karlin, Robert L. Zisk, Roland B. Ninomiya, Schmeltzer, Aptaker & Sheppard, P.C., Washington, DC, Himanshu M. Patel, Zarco & Associates, Miami, FL, Robert A. Murphy, Casner & Edwards, LLP, Boston, MA, Robert F. Salkowski, Zarco & Pardo, Miami, FL, for Defendants.

**MEMORANDUM AND ORDER**

SARIS, District Judge.

## I. INTRODUCTION

In this proposed class action,[1] plaintiff franchisees allege that Dunkin' Donuts, Inc. ("Dunkin'") violated the Franchise Agreement[2] when it failed to put advertising fees collected from franchisees that underreport gross sales into the advertising and sales promotion fund, and instead diverted the fees to its own account. The defendant has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). After hearing, the motion for judgment on the pleadings is *DENIED.*

## II. ALLEGED FACTS

The complaint alleges the following facts.

---

1. The proposed class includes all current and former franchisees who executed a Dunkin' Donuts franchise agreement between January 1, 1989 and August 13, 1999, with certain exceptions.

2. Plaintiffs dismissed with prejudice their claims of breach of fiduciary duty, conversion and accounting (Counts III, IV and V). They also agreed to dismiss Counts I and II as they relate to Dunkin's recovery of monies from delinquent franchisees.

The Plaintiff franchisees own and operate Dunkin' Donuts shops throughout Broward County, Florida. The rights and responsibilities of Dunkin' and its franchisees are set forth in separate written franchise agreements, the terms of which are nearly uniform and vary only slightly from year to year.

Under the uniform Franchise Agreement, the franchisees are obligated to pay Dunkin' monthly franchise fees in the amount of a percentage of gross sales. Typically, the percentage is between 4.9% and 6.99%. Franchisees must also pay to the Fund continuing advertising fees equal to 5% of the gross sales realized at the individual shops. (§ 4.4). The payment of advertising fees must be paid to "Dunkin' Donuts at Post Office Box 1097, Charlotte, North Carolina, 28201–1097." (§ 4.3). Dunkin' collects these fees and places them into a marketing, advertising and sales promotion fund, known as the "Dunkin' Donuts of America, Inc. Franchise Owners' Advertising and Sales Promotion Fund." The Fund has no separate legal status. In the Franchise agreement, Dunkin' agrees:

> To administer the Dunkin' Donuts Franchise Owners Advertising and Sales Promotion Fund (the "Fund") and to direct the development of all advertising and promotional programs. That portion of FRANCHISEE's advertising contribution equal to one percent (1%) of the Gross Sales of the Shop will be utilized ... to provide for the administrative expenses of the Fund and for programs designed to increase sales and enhance and further develop the public reputation and image of DUNKIN' DONUTS and the Dunkin' Donuts System. The balance, including any interest earned by the Fund, will be used for advertising and related expenses. Contributions to the Fund in excess of the percentage of Gross Sales set forth in Item "F" of the Contract Data Schedule shall be used in accordance with the programs to which they relate. The content of all advertising, as well as the media in which the advertising is to be placed and the advertising area, shall be at the discretion of DUNKIN' DONUTS. DUNKIN' DONUTS undertakes no obligation to insure that any individual franchisee benefits directly or on a pro rata basis from the placement, if any, of advertising in local markets. Upon request, DUNKIN' DONUTS will provide FRANCHISEE a statement of receipts and disbursements of the Fund, prepared by an independent certified public accountant, for each fiscal year of the Fund. (§ 3.5)

Dunkin' has certain rights to examine a shop's books and collect unpaid fees owing to it or the Fund. Section 6.2 provides:

> DUNKIN' DONUTS representatives shall have the right to examine FRANCHISEE's original books, records and supporting documents at reasonable times and to perform such inspections, tests and analyses as it deems appropriate to verify Gross Sales. If an examination reveals that the Gross Sales reported by FRANCHISEE to DUNKIN' DONUTS are less than the Gross Sales ascertained by the examination, *then FRANCHISEE shall immediately pay to DUNKIN' DONUTS any amounts owing to DUNKIN' DONUTS and the Fund and DUNKIN' DONUTS' rental subsidiary based upon the corrected Gross Sales.* If an examination results from FRANCHISEE's failure to prepare, deliver or preserve statements or records required by Paragraph 5.2 of this Agreement, or if an examination of FRANCHISEE's records results in the discovery of a discrepancy greater than three percent (3%) in the Gross Sales reported by FRANCHISEE, FRANCHISEE shall pay or reimburse DUNKIN' DONUTS for any and all expenses

connected with the examination, including, but not limited to, reasonable accounting and legal fees, *the unpaid amounts owed to DUNKIN' DONUTS, its rental subsidiary and the Fund,* and interest thereon from the date payment was due at 18% per annum or the highest permissible rate. Such payments will be without prejudice to any other remedies DUNKIN' DONUTS may have under this Agreement, including the right to terminate this Agreement, without opportunity to cure, in the case of intentional under-reporting of Gross Sales. (Emphasis added).

Section 9.3 provides:

*Interest and costs*—If FRANCHISEE fails to remit when due any payments required under this Agreement, FRANCHISEE agrees to pay, in addition to the unpaid amounts, all collection costs, reasonable attorneys' fees and interest on the unpaid amounts at eighteen percent (18%) per annum on or the highest permissible rate. If FRANCHISEE fails to cure a default following notice, within the applicable time period .... or if this agreement is terminated as a result of FRANCHISEE'S default, FRANCHISEE shall pay to DUNKIN' DONUTS all damages, costs and expenses, including, without limitation, interest at eighteen percent (18%) per annum, or the highest permissible rate, and reasonable attorneys' fees, incurred by DUNKIN' DONUTS as a result of any such default or termination; and said interest and all damages, costs, and expenses, including reasonable attorneys' fees, may be included in and form part of the judgment awarded to DUNKIN' DONUTS in any proceedings brought by DUNKIN' DONUTS against FRANCHISEE.

Section 9.4.1 provides:

*FRANCHISEE shall promptly pay DUNKIN' DONUTS all sums owing or accrued from FRANCHISEE to DUNKIN' DONUTS, the Fund, and DUNKIN' DONUTS rental subsidiary* prior to such termination or expiration, including interest and any damages, costs and expenses, including reasonable attorneys' fees, incurred by DUNKIN' DONUTS, by reason of default on the part of FRANCHISEE, as set forth in paragraph 9.3 above. (Emphasis added).

This underreporting of gross sales results in a lower payment of the required advertising and marketing fees into the Fund. As a result of Dunkin's loss prevention activities, underreporting franchisees have paid hundreds of thousands of dollars to Dunkin'. In a memorandum dated August 16, 2001, from the Dunkin' Director of Loss Prevention, Dunkin' reported that it recently collected more than $600,000 in such fees. Dunkin' has not allocated to the Fund any money collected through its loss prevention activities. Instead, Dunkin' has recognized all of those collected monies as general income.

## III. DISCUSSION

### A. Standard

The standard of review for a motion for judgment on the pleadings under Fed. R.Civ.P. 12(c) is the same as that for a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Collier v. City of Chicopee,* 158 F.3d 601, 602 (1st Cir.1998).

In considering a motion to dismiss, a court must take the allegations in the [non-moving party's pleading] as true and must make all reasonable inferences in favor of the [non-moving party]. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). The non-moving party's pleading "should not be dismissed for failure to state a claim unless it appears beyond a doubt that [the non-moving party] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991)

(quoting *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A court's inquiry is a limited one, focusing not on whether the plaintiff will ultimately prevail but on whether the plaintiff should be entitled to offer evidence to support a claim." *Canty v. Old Rochester Reg'l Sch. Dist.,* 54 F.Supp.2d 66, 68 (D.Mass.1999).

## B. Breach of Contract

■ Defendant claims that the franchisees have failed to allege facts sufficient to support their breach of contract claim. The Dunkin' Franchise Agreement contains a Massachusetts choice of law provision. (§ 16.0). Under the law of Massachusetts, to state a claim for breach of contract, "a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.,* 957 F.Supp. 306, 316–17 (D.Mass.1997). Massachusetts law also implies a duty of good faith and fair dealing in every contract. *See James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co.,* 112 F.3d 1240, 1249 (1st Cir.1997). Under this implied covenant, neither party can do anything that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four v. HBC Assoc.,* 411 Mass. 451, 471, 583 N.E.2d 806, 820 (1991).

Dunkin' argues that the Franchise Agreement contains no obligation to collect deficient advertising and marketing fees, or any express duty to deposit any recovered monies into the Fund. The franchisees respond that the Franchise Agreement requires Dunkin' to deposit any advertising fees collected from shops that have underreported gross sales, into the Fund.

■ An analysis of the Franchise Agreement as a whole supports the plaintiff's interpretation that Dunkin' has a duty to remit any recovered advertising and marketing fees to the Fund. Under the agreement, Dunkin' has a continuing duty to administer the Fund, to use one percent of gross sales of a shop for administrative expenses, and the balance on "advertising and related expenses." (§ 3.5). The contract does not distinguish between fees collected in the ordinary course of business and fees collected as a result of loss prevention activities. Rather, the benchmark is the percentage of gross sales of a shop.

Dunkin' makes four arguments to support its interpretation. First, it argues that the requirement that a franchisee "promptly pay Dunkin' Donuts all sums owing or accrued" from the franchisee to Dunkin Donuts and the Fund indicates that the funds should be paid to Dunkin', not the Fund. However, this is a false dichotomy as the Fund is not a separate legal entity, but is a Fund administered by Dunkin'. The contractual distinction between fees owed to Dunkin' rather than fees owed to the Fund reflects instead a recognition that a franchisee pays different categories of fees, and the fees must contractually be allocated for different purposes. Moreover, under Sections 4.3 and 4.4, all checks for fees are mailed to Dunkin' even when they ultimately will be placed in the Fund.

Next, Dunkin' contends that it has no duty to commence litigation or to engage in loss prevention activities at all. While this may be true, once it has collected marketing and advertising fees, it has an obligation to place them in the Fund. Third, Dunkin' argues that the undisputed evidence is that it makes no money from its collection activities because the costs of collection exceed the return. However, that issue is inappropriate to resolve on a motion for judgment on the pleadings.

Finally, Dunkin' argues that Plaintiffs have not been harmed because the Franchise Agreement specifically disclaims any obligation on Dunkin's part to make expenditures from the Fund that benefit any particular franchisee or represent a *pro rata* share of the franchisee's contribution. Therefore, they argue, the franchisees cannot be compensated individually for any depletion of the Fund. Plaintiffs point to the requirement of extra advertising fees for local programs in specific markets (*See* § 4.4). This debate affects the possible remedies available to plaintiffs, not the threshold duty with respect to the placement of the fees.

## *ORDER*

The motion for judgment on the pleadings is *DENIED*.