**Sharon FEW**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, et al.[1]**

No. 06–cv–427–SM.

United States District Court,
D. New Hampshire.

July 24, 2007.

1. Although not named in the heading of Few's complaint, the narrative of the complaint alleges sufficient facts against Jolene Knight–Ballou, Linda Stalk, and Wayne Evans for me to find that Few intended to name Knight–Ballou, Stalk, and Evans as defendants to this action. Accordingly, I will consider them to be properly named defendants to this action and direct that the appropriate claims be served on them as directed in the Order issued simultaneously with this Report and Recommendation.

Sharon Few, Falls Church, VA, pro se.

## ORDER

McAULIFFE, Chief Judge.

After due consideration of the objections filed, I herewith approve the Report and Recommendation of Magistrate Judge Muirhead dated May 16, 2007, recommending dismissal of the FOIA, age discrimination, race discrimination, Fourth, Eighth and Fourteenth Amendments, and miscellaneous federal constitutional claims as well as State law claims. While defendants make lucid points, they are better made in a motion to dismiss or for summary judgment, rather than in an

objection to the magistrate judge's preliminary (and necessarily deferential) review.

SO ORDERED.

## REPORT AND RECOMMENDATION

MUIRHEAD, United States Magistrate Judge.

Before the Court is the complaint[2] of plaintiff Sharon Few, who has filed suit against Liberty Mutual Life Insurance Company and Liberty Life Assurance Company (hereinafter referred to collectively as "Liberty defendants"), and several Liberty employees. Few's claims allege violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*, federal constitutional and statutory prohibitions against discrimination based on age and race, the federal constitution, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and a number of rights arising under the laws of various states.

As Few is proceeding both pro se and in forma pauperis, the complaint is before me for preliminary review. *See* United States District Court for the District of New Hampshire Local Rules ("LR") 4.3(d)(1)(B). For the reasons stated below, I recommend dismissal of the FOIA, age discrimination, race discrimination, federal constitutional claims, and State law claims alleging violations of the Insurance Act, breach of contract, wrongful termination, defamation, slander, libel, and general violations of unspecified rights under New Hampshire, Virginia, Washington, Oregon, and Florida law from this action. In an Order issued simultaneously with this Report and Recommendation (herein-

after the "Simultaneous Order"), I direct that the ERISA and intentional infliction of emotional distress claims be served against defendants Liberty Mutual Insurance Company, Liberty Life Assurance Company, Knight–Ballou, Stalk, and Evans, and direct that the RICO claim be served against Knight–Ballou, Stalk, and Evans.

### Standard of Review

■ Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review and to, if appropriate:

> report and recommend to the court that the filing be dismissed because the allegation of poverty is untrue, the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief under 28 U.S.C. § 1915e(2); or it fails to establish subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

LR 4.3(d)(1)(B)(i). In conducting the preliminary review, the Court construes pro se pleadings liberally. *See Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir.1990) (following *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997), *cert. denied*, *Ahmed v. Greenwood*, 522 U.S. 1148, 118 S.Ct. 1165, 140 L.Ed.2d 176 (1998).

---

**2.** Few, a resident of Virginia, originally filed her complaint in the United States District Court for the Eastern District of Virginia.

That Court determined that venue was proper in the District of New Hampshire and transferred the matter here.

■ At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. *See Eveland v. Dir. of C.I.A.*, 843 F.2d 46, 49 (1st Cir.1988).

### Background[3]

Few is a 56 year old African–American woman with multiple sclerosis, arthritis in her neck, spine, and knees, depression, and impairment of her short term memory.[4] Few claims that her medical condition is worsening as she ages.

Few was employed by Liberty in the 1980s. Few has been covered by a life insurance policy issued by Liberty since at least 1988. In May of 1990, while employed as a "retro rater" in Liberty's Dover, New Hampshire office, Few became disabled and unable to work.

It appears that because of her total disability, Liberty paid the premiums for Few's life insurance policy from the time that Few became unable to work until 2005, when Liberty terminated Few's policy. Under the terms of Few's policy, Liberty required Few to periodically provide proof of her continued disability in order to maintain Liberty's payment of Few's life insurance premiums. At times, Few

states that a 1995 Medicare declaration of total disability was accepted by defendants as proof of Few's continued disability.

From 1990 through 1999, while Few was totally disabled, the defendants paid the premiums on Few's insurance policy without complaint. In 1999, Few requested a copy of her life insurance policy from Liberty. Few, upon reviewing the policy, discovered that, due to her disability, she could request a payment of $25,000 as a benefit of her policy. Few requested the $25,000 payment.

Shortly after Few's request, in 2000, service of Few's policy began to be handled by Jolene Knight–Ballou in Liberty's legal department. Knight–Ballou, according to Few, began to make "unnecessary and illegal demands" on Few. Knight–Ballou also began to threaten Few with cancellation of her life insurance policy, worth $66,000, if Few failed to comply with Knight–Ballou's demands. Another Liberty legal department employee, Linda Stalk, also became involved in the administration of Few's policy and began using the same threatening tactics employed by Knight–Ballou.

Few alleges that, beginning in 2005, she was ordered to attend medical appointments and provide medical records that exceeded both the time frame during which such a request could be made, and the number of appointments that Liberty could require Few to attend under the terms of the insurance policy. Few contends that her policy permitted Liberty to

---

**3.** Many of the facts alleged by Few were stated in vague and non-specific terms. Construing the complaint liberally, as I must, I have attempted to accurately reflect in this Report and Recommendation the substance of Few's factual allegations. If Few disagrees with the facts as recounted, she should do so by properly objecting to this Report and Recommendation or by properly moving to amend her complaint.

**4.** Few also must be monitored for multiple myeloma, a cancer of the blood plasma, for the remainder of her life, and has elevated muscle enzymes. It is unclear whether or how these additional conditions have impacted Few's disability.

request proof of plaintiff's continued disability during a period of three months preceding the April 28 anniversary of plaintiff's placement on long-term disability.[5] Further, Liberty was only allowed to request that plaintiff see a doctor once a year. Although Few does not detail specific incidents that occurred between 2000 and 2005, it appears that the defendants' threatening tactics continued during that period.

In April of 2005, Plaintiff attended a doctor's appointment at the request of Liberty. Liberty scheduled additional appointments for Few, but Few refused to attend those appointments on the grounds that they created more of an imposition on Few's life than she was required to tolerate under the policy.

On July 1, 2005, defendants cancelled Few's insurance policy. Few received notice of the cancellation on July 5, 2005, by letter advising her that Liberty had decided to close her account, and that she had until July 31 to convert her life insurance policy with Liberty to an individual insurance policy.[6] The stated reasons for the cancellation were that Few was alleged not to have attended medical appointments that Liberty had ordered her to attend.

Few alleges that, per the instructions provided to her by defendants at the time they notified Few of the cancellation of her policy, she filed a timely appeal of the cancellation of her insurance policy on August 29, 2005, which was within sixty days of the issuance of the cancellation notice. Few alleges that, during the pendency of the appeal, defendants again requested that, among other things, she attend additional medical appointments and surrender

all of her medical records generated since February of 2004. Few alleges that while she did satisfy all of the requests made of her that she was required to satisfy under the terms of her policy, the requests made by Liberty during the appeals process continued to exceed that which the policy permitted Liberty to demand.

By letter dated October 14, 2005, Few was notified that her appeal was denied. Few then filed a complaint with the New Hampshire Department of Insurance ("NHDI"). The NHDI, according to Few, was unable to understand the language of Few's insurance policy or the laws under which defendants claimed authority for their actions. Few asserts that this confusion was, in part, because defendants Knight–Ballou, Stalk, and Evans intentionally supplied misleading and/or false information to the NHDI for consideration. For example, Few alleges that the terms of her insurance policy allow Liberty "to have a physician it designates examine [Few] whenever it may reasonably require during [her] disability, but not more often [than] once a year after [Few]'s insurance has been continued for two full years." However, Few charges, defendants falsely advised NHDI only that the terms of the policy were that "[Liberty] shall have the right to a physician it designates examine [Few] whenever it may reasonably require." Ultimately, the NHDI denied plaintiff's claim on the grounds that they "can't tell [defendants] what to do."

Few asserts that she has made every effort to exhaust the ERISA claim by appeal to the defendants and to the NHDI. Few asserts, however, that her efforts

**5.** Plaintiff was placed on long-term disability on April 28, 1992.

**6.** The July 1, 2005 letter also stated that Few's employment at Liberty had been terminated on April 28, 1992, when she began receiving

long-term disability insurance. Few had not, prior to receiving that letter, ever received written notification of the termination of her employment.

have been thwarted both by the false and/or misleading information provided to the NHDI by defendants' employees, and by Stalk and Knight–Ballou's failure, on several occasions, to provide Few with documents, to which she is entitled, either altogether or in a timely fashion. Additionally, Few claims that she has been provided with a number of different versions of her policy, including versions relating to a health insurance policy, although Few has never held a health insurance policy with Liberty.

Few's complaint states her belief that the defendants' actions were motivated by racial discrimination which, Few claims, extends from and continues racial harassment that Few experienced when she worked at Liberty in 1989 and 1990. Further, Few believes that defendants' actions were discriminatorily taken based on Few's age. Few claims that when she turns sixty, under the terms of the policy at issue here, she no longer has to submit proof of continued disability in order to maintain Liberty's payment of her policy premiums as a benefit. Few believes that Liberty wrongly cancelled her life insurance policy in an effort to make sure that Few did not turn sixty while covered by the policy.

*Discussion*

## I. ERISA Claim[7]

The primary purpose of the ERISA statute is to provide "administrative oversight" of employee benefit plans. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). ERISA was enacted to protect the interests of participants in employee benefit plans. *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1132 (1st Cir.1995). Few claims that her interest in a benefit plan supplied to her by her former employer, and continued for her by that employer as a benefit accruing to her as a result of her total disability, was wrongly terminat-

---

7. The ERISA statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). ERISA's preemption provision is expansive, but does not "extend to the furthest stretch of its indeterminacy." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). "[A] State law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Id.* at 147, 121 S.Ct. 1322 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Because I find that Few has stated a claim under ERISA upon which relief might be granted, her State law claims that relate to her employee benefit plan are pre-empted by her ERISA claim. Few's State law claims that arise out of laws of general application, that only have an incidental effect on the administration of the ERISA plan in question here, are not pre-empted. *See Egelhoff*, 532 U.S. at 147–48, 121 S.Ct. 1322. At this preliminary stage of review, it would be premature to attempt to delineate the precise contours of ERISA pre-

emption as it applies to this case. It is clear, however, that at least two of Few's State law claims, her breach of insurance contract claim and her claim raised under New Hampshire's Insurance Act, are directly related to Few's ERISA plan. Accordingly, I recommend dismissal of the breach of insurance contract and Insurance Act claims.

Additionally, Few alleges a claim of wrongful termination. Few bases the wrongful termination claim on the defendants' alleged failure to properly notify Few of her termination. I find that this claim, too, is connected to or relates directly to Few's ERISA claim, as she apparently challenges her termination only insofar as it affects the administration of the benefits in question here. I therefore recommend that the wrongful termination claim be dismissed. If this Report and Recommendation is approved, the dismissal of these claims will be without prejudice to refiling in a court of appropriate jurisdiction should it later be determined that the ERISA claim raised here will not act to pre-empt these State law claims.

ed by the defendants. As such, she brings this claim pursuant to ERISA.

■ In order to state a claim under ERISA, plaintiff must allege that she has been improperly denied benefits under a "welfare benefit plan" as defined under 29 U.S.C. § 1002(1) of ERISA. *See Robles v. Combined Ins. Co. of Am.*, 275 F.Supp.2d 168, 170 (D.P.R.2003). "A welfare benefit plan is made up of five elements: (1) a plan, fund, or program (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vocation benefits, day care centers, scholarship funds, prepaid legal services, or severance benefits (5) to participants or their beneficiaries." *Id.* (citing 29 U.S.C. § 1002(1)) (internal quotations omitted); *see also* 1A Couch on Ins., § 7:16 (3d ed.2006) (setting out elements of ERISA claim). A "participant" is "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

■ Few alleges that she is a "participant," as that term is defined by § 1002(7), as she is a former employee of Liberty who has become eligible to receive benefits from an employee benefit plan. Further, Few sufficiently alleges facts to establish that the plan in question is a "welfare benefit plan" as defined by § 1002(1), that she is covered by that plan, and that the life insurance plan in question here was either "established or maintained" by "an employer." *See* 29 U.S.C. § 1002. Few has alleged that for at least ten years she

received the benefit of the plan in question. Few further states that the plan was providing her with disability benefits in the form of payment of her life insurance premiums, and that she, as the participant, was the recipient of the benefits. Finally, Few alleges that her benefits were wrongly terminated by her former employer. Accordingly, I find that the allegations set forth in Few's complaint set out the elements of an ERISA claim. Without commenting on the merits of that claim, I will direct, in the Simultaneous Order, that the ERISA claim be served on defendants.

## II. *RICO claim*

■ Few claims that Knight–Ballou, Stalk, and Evans unlawfully conspired to commit certain acts, in violation the provisions of the RICO statute, which provides that:

> it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a private cause of action under RICO, a plaintiff must allege: (1) the existence of an enterprise [8]; (2) that the defendants were employed by or associated with the enterprise; (3) that the enterprise engaged in, or the activities of the enterprise affected, interstate commerce; (4) the employees conducted the enterprise's affairs through a "pattern of racketeering activity;" and (5) which is causally related to the harm

---

**8.** An enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Ahmed*, 118 F.3d at 889; 18 U.S.C. § 1961(4).

alleged. *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991).

■■■ A pattern of racketeering activity is one involving the commission by named defendants of at least two predicate acts enumerated in the RICO Statute, the second of which must occur within ten years of the first. *Ahmed,* 118 F.3d at 889. Predicate acts include any act or threat involving one of a number of recognized indictable offenses. *See* 18 U.S.C. § 1961(1); *Ahmed,* 118 F.3d at 888. To support the pattern requirement, a plaintiff must show that either the related predicate acts "amounted to" continued criminal activity or that there was a significant possibility that the criminal activity would continue in the future. *Ahmed,* 118 F.3d at 889.

### A. *The Liberty Defendants*

Few alleges that Liberty Life Assurance Company and Liberty Mutual Insurance Company, as corporations, are the enterprises benefitting from a racketeering scheme perpetrated by its employees Knight–Ballou, Stalk, and Evans. Because she has alleged that the Liberty defendants are corporations, they constitute an "enterprise" under § 1961(4).

■■■ A culpable person subject to liability under RICO must be "employed by or associated with" the RICO enterprise and "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise." *Miranda,* 948 F.2d at 44 (citations omitted). Because the racketeer and the enterprise must be

distinct, Few's RICO claim against the Liberty defendants, who constitute the enterprise, cannot succeed. I therefore recommend that the Liberty defendants be dismissed as defendants from the RICO claim.[9] As explained below, the RICO claim can, however, proceed against Knight–Ballou, Stalk, and Evans.

### B. *Liberty Employees: Knight–Ballou, Stalk, and Evans*

■■■ Individual officers or employees of the enterprise, acting within the scope and course of their employment, may be culpable as racketeers and subject to liability for civil RICO violations. *Id.* As stated above, in order to properly state a claim against the individual Liberty employees, Few must allege that each of the defendants engaged in a pattern of "racketeering activity" which resulted in the harm she alleges. *Id.* at 44.

■■■ Liberally construing Few's claims regarding Knight–Ballou, Stalk, and Evans, I find that Few has properly alleged that each of these defendants have committed two or more indictable acts to subject them to liability under RICO, as those acts are alleged to have resulted in the harm of which Few complains. Specifically, Few alleges that each of these individual defendants, in furtherance of their efforts to wrongfully deny benefits to Few, provided, by phone, fax, and mail, false and/or misleading information to the NHDI. Few claims that these actions amount to both mail fraud[10] and wire

---

**9.** Although not specifically raised as a theory of liability by Few, it should be noted that 18 U.S.C. § 1962(c) does not recognize the liability of the enterprise under a theory of respondeat superior. *Miranda,* 948 F.2d at 45.

**10.** 18 U.S.C. § 1341 defines mail fraud as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or any-

fraud,[11] both of which are among the enumerated predicate acts which can establish a pattern of racketeering activity under RICO. *See* 18 U.S.C. § 1961(1)(B) (listing offense which can constitute predicate acts to satisfy racketeering element of RICO claim). Few alleges that, as a result of these acts, her appeal before the NHDI was wrongfully denied. She further claims that the wrongful denial of benefits was achieved by the individual defendants' numerous acts of extortion,[12] in the form of threats that she would lose her insurance policy if she failed to comply with the unreasonable demands of the defendants that were designed to force the cancellation of her policy. *Id.*

All of the alleged acts of mail fraud, wire fraud, and extortion occurred within the last seven years, satisfying the "within ten years" time frame of the pattern requirement. Further, Few alleges that the acts of mail fraud, wire fraud, and extortion are the proximate cause of the harm alleged, which is the loss of benefits and the cancellation of a $66,000 life insurance policy, which resulted from the improper tactics of the defendants.

Few has also sufficiently alleged that the Liberty defendants are involved in interstate commerce, that the conduct of the individual defendants amounted to continued criminal activity, that the individual defendants' conduct will result in the continued denial of benefits, and that the acts in question were intentionally inflicted in order to wrongfully deprive Few of benefits to which she is entitled. These allegations sufficiently to state a RICO claim to allow that claim to go forward at this time. In my Simultaneous Order, therefore, I will direct service of the RICO claim against defendants Knight–Ballou, Stalk, and Evans.

### III. *FOIA Claim*

"FOIA requires government agencies to 'make ... promptly available' to any person, upon request, whatever 'records' the agency possesses unless those 'records' fall within any of nine listed exemptions. 5 U.S.C. § 552(a)(3)." *Church of Scientolo-*

---

11. 18 U.S.C. § 1343 defines wire fraud as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

12. Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

thing represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

*gy Int'l v. DOJ*, 30 F.3d 224, 228 (1st Cir.1994); *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) ("Upon request, FOIA mandates disclosure of records held by a federal agency.").

■■■ FOIA only gives rise to a private cause of action if a proper request for information is made to and then denied by a federal agency. *See* 5 U.S.C. § 551(1) (defining the meaning of "agency" for FOIA purposes). The defendants here are private corporations and individuals, and not federal agencies. Accordingly, the defendants had no obligation arising under FOIA to provide Few with information, and I recommend that the FOIA claim be dismissed from this action.

## IV. *Age and Race Discrimination Claims*

■■■ Few has alleged generally that she believes that the actions taken by the defendants in regard to the cancellation of her insurance policy were motivated by discrimination based on Few's age and race. To support this allegation, Few points only to her own subjective belief that she has been discriminated against. Few's beliefs are not supported in the complaint by any factual allegations or cited incidents that would give rise to the inference that the defendants intended to discriminate against Few in the provision of life insurance benefits.

■■■ In filing a civil rights complaint, a "claim must at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Guglielmo v. Cunningham*, 811 F.Supp. 31, 35 (D.N.H.1993) (quoting *Dewey v. Univ. of N.H.*, 694 F.2d 1, 3 (1st Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983)); *accord Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995) ("Even pro se litigants must do more than make mere conclusory statements regarding constitutional claims.") (internal citations omitted). Because I find that Few's allegations of discrimination do no more than state conclusory claims based on Few's subjective beliefs, I recommend that the age and race discrimination claims be dismissed.

## V. *Federal Constitutional Claims*

■■■ Few claims that the defendants, all private entities, have violated her federal constitutional rights. Specifically, Few alleges that defendants violated her Fourth Amendment right not to have her person illegally seized, her Eighth Amendment right not to be subjected to cruel and unusual punishment, and her Fourteenth Amendment due process rights, as well as her federal constitutional right "to the [p]ursuit of [h]appiness," by requiring her to attend medical appointments beyond those permitted by Few's insurance policy.

■■■ The United States Constitution "erects no shield against merely private conduct, however … wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). A plaintiff claiming an infringement of her civil rights must establish that (1) the defendants deprived plaintiff of a right secured by the Constitution or laws of the United States, and that (2) the defendants acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. In relation to the second requirement, a private actor can be held to be a State actor under only three circumstances: "(i) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (ii) where the private party has exercised powers

that are 'traditionally the exclusive prerogative of the state,' or (iii) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert that the action of the private party must in law be deemed to be that of the state." *Lewis v. Law–Yone,* 813 F.Supp. 1247, 1254 (N.D.Tex.1993) (quoting *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777); *see also Jackson v. Metro. Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Here, Few alleges no facts that would allow me to consider, even for purposes of preliminary review, that the defendants here are State actors. Accordingly, Few cannot state a claim against defendants for violations of her federal constitutional rights, and I recommend that those claims be dismissed from this action.

## VI. *Claims Based on State Law*

### A. *Defamation, Slander, and Libel Claims*

 Few has alleged State law claims of defamation, libel, and slander, alleging that some representation made by defendants to the NHDI defamed her. Under New Hampshire law, "[t]o establish defamation, there must be evidence that a defendant ... published ... a false and defamatory statement of fact about the plaintiff to a third party." *Moss v. Camp Pemigewassett, Inc.,* 312 F.3d 503, 507 (1st Cir.2002). "A statement is defamatory if it 'tends to lower the plaintiff in the esteem of any substantial and respectable group of people.'" *Id.* (citing *Nash v. Keene Publ'g Corp.,* 127 N.H. 214, 219, 498 A.2d 348 (1985)). While Few alleges that defendants made some defamatory statement to the NHDI, she fails to specify what the statement was, how it was false, and how it defamed her. Few further fails to identify any substantial and respectable group of people whose opinion of Few would be lowered by whatever defendants said to the NHDI in opposition to Few's appeal. Accordingly, I find that Few's claims alleging defamation, slander, and libel do not suffice to state a claim upon which relief may be granted, and I recommend that those claims be dismissed.[13]

### B. *Intentional Infliction of Emotional Distress*

In any civil action of which the district court has original jurisdiction, the court also has jurisdiction over all other claims that are so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Few alleges generally that the defendants, by their actions, intentionally caused her to suffer from emotional distress, and that she did suffer from emotional distress as a result of the harm she alleges the defendants caused to her in wrongfully canceling her insurance policy. The intentional infliction of emotional distress claim is appropriately ordered served on defendants pursuant to this Court's pendant jurisdiction, and I will so direct in my Simultaneous Order.

### C. *Unspecified Violations of State Law*

Few alleges additional theories of defendants' civil liability under State law.[14] Few alleges generally that her rights under the State laws of New Hampshire,

---

**13.** Few lumps the defamation, libel and slander claims together in her complaint. Because she appears to intend that all of these claims should arise out of statements made to NHDI by defendants, my finding that the allegations regarding these claims are insufficient to support a defamation claim applies to any intended slander or libel claim as well.

**14.** As previously noted, I will not at this time address claims that I have determined would be pre-empted by Few's ERISA claims.

**454**

Virginia, Washington, Oregon, and Florida have been violated by defendants' actions. Few is not specific as to what acts have violated which laws of these states, and I therefore recommend that, to the extent that Few has not named any specific cause of action under which her State law rights arise, that the State law claims be dismissed.

### Conclusion

For the reasons stated herein, I recommend dismissal of the FOIA, age discrimination, race discrimination, Fourth Amendment, Eighth Amendment, Fourteenth Amendment, and miscellaneous federal constitutional claims, as well as State law claims alleging violations of the Insurance Act, breach of contract, wrongful termination, defamation, slander, libel, and general unspecified violations of the laws of New Hampshire, Virginia, Washington, Oregon, and Florida from this action. In my Simultaneous Order, I direct service of the ERISA, RICO, and intentional infliction of emotional distress claims on defendants as described in that Order.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. *See Unauthorized Practice of Law Comm. v. Gordon,* 979 F.2d 11, 13–14 (1st Cir.1992); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).